UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-CR-365-MOC-DCK-1

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| | ) |
| Vs. | ) ORDER |
| | ) |
| **TARIANO ANTOINE WATKINS**, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's Motion to Suppress. (Doc. No. 22). Having considered Defendant's motion, reviewed the pleadings, and conducted an evidentiary hearing, the Court enters the following findings, conclusions, and Order granting Defendant's motion.

## FINDINGS AND CONCLUSIONS

### I. PROCEDURAL BACKGROUND

On October 20, 2020, Defendant Tariano Watkins was charged in this Court with possession of two firearms by a convicted felon, in violation of 18 U.S.C. § 922(g). (Doc. No. 12). The two firearms were found pursuant to a search conducted in the residence of Defendant's cousin Brandon Watkins. Defendant has moved to suppress the evidence found incident to the search, arguing that the search was unlawful and therefore the evidence seized should be excluded under the Fourth Amendment's "fruit of the poisonous tree" doctrine. The Government has responded in opposition to the motion. The Court held a hearing on the motion on June 21,

1

2021, and the parties subsequently filed supplemental memoranda. This matter is ripe for disposition.

## II. FACTUAL BACKGROUND

On August 9, 2018, the Honorable Jesse B. Caldwell, III, a North Carolina Superior Court Judge, sentenced Defendant to 9 to 20 months' incarceration. The judge suspended the sentence of incarceration and placed Defendant on supervised probation for 30 months. On April 1, 2019, Defendant's probation was revoked, and his suspended sentence was activated. See (Def. Ex. 1).

On January 24, 2020, Defendant was released and placed on post-release supervision (PRS). (Def. Ex. 2). As a supervisee, Defendant was subject to N.C. GEN. STAT. § 15A-1368.4(e)(10), which requires a supervisee to "[s]ubmit at reasonable times to searches of the supervisee's person[.]" N.C. GEN. STAT. § 15A-1368.4(e)(10). The North Carolina Court of Appeals recently held that "by authorizing the Commission to impose a 'search' condition in N.C. GEN. STAT. § 15A1368.4(e)(10) that, by its plain language, is limited to a supervisee's 'person,' the General Assembly thereby intended to foreclose imposition of 'search' conditions pertaining to a supervisee's residence." State v. McCants, 854 S.E.2d 415, 431 (2020). Thus, in North Carolina, a post-release supervisee is not subject to a search of his residence merely because of his status as a supervisee.

On March 27, 2020, Defendant's probation officer, Nicholas Runyan, provided that Defendant's "new address is 9215 Christina Marie Ct. Charlotte, NC, 28213." (Def. Ex. 3). On April 8, 2020, Officer Runyan conducted an "Initial Home Contact" at Defendant's premises at 9215 Christina Marie Ct, where he resided with his girlfriend. (Def. Ex. 4). At that time, Officer Runyan also "Completed Household Members Information." (Id.).

On May 17, 2020, Officer Runyan conducted another home visit at 9215 Christina Marie Ct. (Def. Ex. 5). On July 14, 2020, Defendant was placed on electronic monitoring. On July 21, 2020, Officer Runyan conducted a home visit at 9215 Christina Marie Ct. (Def. Ex. 6). During the following weeks, Defendant began having relationship problems with his girlfriend and had to leave his premises occasionally to stay overnight with friends. Accordingly, probation listed an alternative location where Defendant might spend the night if he had an argument with his girlfriend. The alternative location that probation listed was 9120 Post Canyon Lane, Apartment 5105. See (Def. Ex. 7). On August 31, 2020, Officer Runyon conducted a visit "AT 9120 POST CANYON LANE APT. 5105." (Id.).

On September 14, 2020, the Post-Release Supervision and Parole Commission entering an order conditionally revoking Defendant's parole/release and authorized and directed authorities to arrest Defendant through an arrest warrant. (Def. Ex. 8-Warrant for Arrest). On September 15, 2020, two probation officers knocked on the door of 9120 Post Canyon Lane, Apartment 5105, the alternative address that probation had listed as Defendant's address. (Def. Ex. 7). After receiving a phone call from a probation officer, Defendant walked outside of his cousin Brandon Watkin's apartment at 9120 Post Canyon Lane, Apartment 5205, where Defendant was staying as an overnight guest. Brandon Watkins' apartment, Number 5205, is above Apartment Number 5105, the apartment that was listed as an alternative address and the location where probation had conducted a visit on August 31, 2020. (Def. Ex. 7). As Defendant walked down the stairway away from his cousin's apartment, carrying his electronic monitoring equipment, two probation officers approached him. The probation officers, Bryan Evans and Chris Rudar, were armed and wearing tactical vests. Defendant's probation officer, Nicholas Runyan, was not with Officers Rudar and Evans.

3

The probation officers did not inform Defendant that his release had been conditionally Revoked, they did not inform him that he had an outstanding arrest warrant, and they did not arrest him as he stood outside of Brandon Watkins' apartment. Instead, the officers told Defendant that they "needed to step inside" of his cousin's apartment. Officers knew that Apartment 5205 was not listed as an address on Defendant's probation paperwork. (Def. Ex. 7). The officers also knew that Defendant was only staying in Apartment 5205 as an overnight guest. Nevertheless, officers entered Apartment 5205 without Defendant's consent. Brandon Watkins was inside his apartment when the officers entered the residence. The parties dispute whether Brandon Watkins gave consent to the officers to enter Apartment 5205. The parties do not dispute, however, that the officers told Brandon Watkins that they had the authority to enter the residence so the officers could check on Defendant's electronic monitoring equipment. According to Defendant, Brandon Watkins told the officers he did not want them to come into his apartment, but they came in anyway. See (Def. Ex. 9, 10, 11 - Body Camera Videos).

Once inside Brandon Watkins' apartment, the probation officers placed Defendant in handcuffs and informed Brandon Watkins and Defendant that there was an arrest warrant for Defendant. Probation officers then began searching the apartment. When entering, Officer Robert Stark directed Brandon Watkins to move away from the sofa. Officer Stark was not wearing gloves, and he began removing cushions from the sofa. When Officer Stark started to move the large sofa, Brandon Watkins suggested that the officer not move the sofa because it was broken. The officer continued to search around the sofa and reportedly located an ammunition box from underneath furniture. Officer Stark asked Brandon Watkins for permission to search the entire residence. Brandon Watkins refused to consent to the search. Officer Stark told Brandon Watkins that if he didn't consent to a search of his entire residence, officers would

4

hold him and obtain a search warrant based on the smell of marijuana and the ammunition box found in the residence.

Officer Stark then applied to search Brandon Watkins' residence. A state magistrate authorized the issuance of a search warrant based on Officer Stark's affidavit. Accordingly, officers searched the remaining areas of Brandon Watkins' home and reportedly found two handguns located in a bag with Defendant's debit card. On October 20, 2020, the Government charged Defendant with unlawfully possessing two firearms on September 15, 2020, in violation of 18 U.S.C. § 922(g). (Doc. No. 12). Defendant now seeks to suppress that evidence.

## III. DISCUSSION

The Fourth Amendment guarantees the right of the people to be free from unreasonable searches and seizures "of their persons, houses, papers, and effects." U.S. Const. Amend. IV. "[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585 (1980) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)). The "'basic purpose of this Amendment,' . . . 'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.'" Carpenter v. United States, 138 S. Ct. 2206, 2213 (2018) (quoting Camara v. Municipal Court of City & Cnty. of San Francisco, 387 U.S. 523, 528 (1967)). "The Founding generation crafted the Fourth Amendment as a 'response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity.'" Id. (quoting Riley v. California, 134 S. Ct. 2473, 2494 (2014)). Thus, warrantless searches of a home are "presumptively unreasonable." Payton, 445 U.S. at 586. The government bears the burden of proving by a preponderance of the evidence the legality of the search and seizure of

evidence obtained without a warrant. See Welsh v. Wisconsin, 466 U.S. 740, 749–50 (1984); United States v. Matlock, 415 U.S. 164, 177 n.14 (1974).

An individual's expectation of privacy is at its apex in his home. United States v. Gray, 491 F.3d 138, 145–46 (4th Cir. 2007). In Minnesota v. Olson, the Supreme Court held that an overnight guest in a home has a "legitimate expectation of privacy." 495 U.S. 91, 98–99 (1990). A parolee's expectation of privacy is reduced, but it still falls within the Fourth Amendment's protection against unreasonable searches and seizures. See United States v. Bradley, 571 F.2d 787, 789 n.2 (4th Cir. 1978). "The ultimate touchstone of the Fourth Amendment is reasonableness." Kentucky v. King, 563 U.S. 452, 459 (2011).

Courts have assessed two primary factors when considering the reasonableness of a supervisee's search. See United States v. Clark, No. 7:16cr32-1(H)(2), 2017 WL 9485522, at **5–6 (E.D.N.C. June 27, 2017) (explaining and adopting analysis in United States v. Freeman, 479 F.3d 743 (10th Cir. 2007)). First, courts examine whether the search was made for the purpose of the "special needs" of supervision. See Clark, 2017 WL 9485522, at **5–6 (citing Griffin v. Wisconsin, 483 U.S. 888, 875 (1987)). In doing so, courts determine whether the statute authorizing the search is reasonable and examine whether the search complied with the statute or regulation. Second, if, on the other hand, the search was not made for the purpose of the "special needs" of supervision, courts have conducted a general Fourth Amendment "examin[ation of] the totality of circumstances of the search, balancing the individual's privacy against the governmental interests. See id. (citing Samson v. California, 547 U.S. 843, 848 (2006) and United States v. Knights, 534 U.S. 112, 118 (2001)).

The Supreme Court has pointed out that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when

6
Case 3:20-cr-00365-MOC-DCK   Document 45   Filed 11/23/21   Page 6 of 12

there is reason to believe the suspect is within." Payton, 445 U.S. at 603. The Court reiterated that theme when it said that "[b]ecause an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home." Steagald v. United States, 451 U.S. 204, 214 n.7 (1981). In accord, the "mere existence of an arrest warrant does not authorize entry into a defendant's home, where there is no necessity to enter because the defendant can be arrested" outside of the home. United States v. Albrektsen, 151 F.3d 951, 955 (9th Cir. 1998).

The Court first finds that the arrest warrant in this case did not authorize the officers' entry into Brandon Watkins' residence. Defendant met officers outside of the residence, where they could have immediately arrested him. The only "search"-related condition authorized by North Carolina law, applicable to Defendant as a supervisee, is the "controlling" condition of N.C. GEN. STAT. § 15A-1368.4(e)(10), which specifically allows that a supervisee "[s]ubmit at reasonable times to searches of the supervisee's person[.]" N.C. GEN. STAT. § 15A-1368.4(e)(10) (emphasis added). The statute further states that the "Commission shall not require as a condition of post-release supervision that the supervisee submit to any other searches that would otherwise be unlawful." Id. This Court is bound by the state court's interpretation of Section 15A-1368.4. See United States v. Scott, 941 F.3d 677, 683–85 (4th Cir. 2019) (citing Griffin, 483 U.S. at 875) (holding that the statutory condition of post-release supervision, rather than condition set forth in the supervision agreement, controlled).

The North Carolina Court of Appeals recently held that "by authorizing the Commission to impose a 'search' condition in N.C.G.S. § 15A-1368.4(e)(10) that, by its plain language, is limited to a supervisee's 'person,' the General Assembly thereby intended to foreclose imposition of 'search' conditions pertaining to a supervisee's residence." State v. McCants, 854

7

S.E.2d 415, 431 (2020). The North Carolina Court of Appeals held that the Department of Public Safety "is without the authority to impose conditions of PRS, all conditions must be imposed by the Commission." Id. at 437. Furthermore, the Court held that "the catch-all provision in N.C.G.S. § 15A-1368.4(c) cannot be used to expand the Commission's authority beyond that which the General Assembly intended and, therefore, cannot serve as authority to impose as a condition of PRS warrantless searches of a supervisee's residence." Id. at 443. Thus, under McCants, the probation officers in this case lacked legal authority to search Brandon Watkins' home based on Defendant's PRS conditions. See id.

When officers approached Defendant, they only had authority to arrest him pursuant to the arrest warrant because his "release" had been "conditionally revoked" by the Post-Release Supervision and Parole Commission. See (Ex. 8). Probation could not justify a search based on PRS conditions that had been revoked because Mr. Watkins was not a supervisee within the meaning of the statute at that time. Moreover, Apartment 5205 was not Defendant's premises. Staying temporarily at a family member's home as an overnight guest does not make the family member's home Defendant's "premises" within the meaning of § 15A-1368.4. Under these circumstances, the search was not conducted at a reasonable time, was not reasonably related to PRS, and therefore was not authorized by North Carolina law.

Moreover, the entry into Brandon Watkins' apartment was unreasonable under the totality of the circumstances. "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" United States v. Knights, 534 U.S. 112, 118 (2001) (quoting Wyoming v. Houghton, 527 U.S. 295, 300 (1999)). In Knights, the Supreme

8

Court conducted a balancing test to determine whether, under the totality of the circumstances, the search was reasonable regardless of the "official purpose" of the search. 534 U.S. at 122.

Here, under the totality of the circumstances, the search of the home where Mr. Watkins was staying as an overnight guest was not supported by reasonable suspicion.[1] See Olson, 495 U.S. at 98–99 (holding that an overnight guest in a home has a "legitimate expectation of privacy."). "Reasonable suspicion requires 'a particularized and objective basis for suspecting the person [searched] of criminal activity.'" United States v. Midgette, 478 F.3d 616, 625 (4th Cir. 2007) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Reasonable suspicion cannot be an "inchoate and unparticularized suspicion or 'hunch.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). Officers had no reasonable suspicion of criminal activity that justified entering Brandon Watkins' home.

The Government contends that the officers had the right to enter Brandon Watkin's residence because Brandon Watkins consented to the entry. The Court disagrees. The entire search and subsequent search warrant were predicated on the officers' mistake in not arresting Defendant and requiring him to enter an apartment where he did not live. Everything after that was the "fruit of the poisonous tree."

---

[1] Neither the Supreme Court nor the Fourth Circuit has explicitly set the standard for this inquiry as "reasonable suspicion" for all probationers. See Knights, 534 U.S. at 121 (holding that "balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house") (emphasis added). However, both have reached conclusions that a finding of reasonable suspicion satisfies the Fourth Amendment in the context of warrantless probation searches. See Knights, 534 U.S. at 121–22 ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.").

Here, the officers told Defendant they "needed to step inside" of his cousin's apartment to check Defendant's electronic equipment. However, as the Court has discussed, the officers lacked legal authority to enter Brandon Watkins' residence. Thus, any purported consent that Brandon Watkins gave to the initial entry was invalid and involuntary because the officers claimed to have authority that they lacked. See United States v. Digiovanni, 650 F.3d 498, 514 (4th Cir. 2011) ("The false implication [that defendant was bound by his earlier consent] . . . and the "hold on a second" statement . . . lend support to the plausible conclusion that a reasonable person would not have felt free to decline Trooper Conner's request to search the car.") abrogated in part on other grounds by Rodriguez v. United States, 575 U.S. 348 (2015).

Furthermore, the Court finds that the good-faith exception established in United States v. Leon, 468 U.S. 897 (1984), does not apply here because "Leon only prohibits penalizing officers for their good-faith reliance on magistrates' probable cause determinations." United States v. Mowatt, 513 F.3d 395, 405 (4th Cir. 2008), overruled on other grounds by Kentucky v. King, 563 U.S. 452 (2011). Thus, the good-faith exception does not apply where officers have entered a residence unlawfully to conduct a search before obtaining a search warrant. Id. at 404–05. Here, as in Mowatt, the "exclusionary rule operates to penalize the officers for their constitutional violations that preceded the magistrate's involvement." Mowatt, 513 F.3d at 405 (emphasis in original). The Fourth Circuit has expressly declined to apply the good faith exception to warrantless searches, such as this one, that are allegedly based upon an officer's mistaken but "good faith" belief that the search was justified. See United States v. Moss, 963 F.2d 673, 679 (4th Cir. 1992); see also United States v. Rush, 808 F.3d 1007, 1008 (4th Cir. 2015). Because the search warrant was prompted by the original illegal entry and search, the evidence seized pursuant to the warrant must be suppressed.

Moreover, while the Supreme Court has recognized a good-faith exception outside of the warrant context in cases where police relied on a negligent, police bookkeeping error, Herring v. United States, 555 U.S. 135, 137 (2009), or when "the police conduct a search in objectively reasonable reliance on binding judicial precedent," Davis v. United States, 564 U.S. 229, 239 (2011), those exceptions do not apply here.

Here, as discussed, the officers were bound by North Carolina statutory law prohibiting residential searches of individuals on post-release supervision. See N.C. GEN. STAT. § 15A-1368.4(e)(10). The officers were bound by binding Fourth Circuit precedent holding that post-release supervision conditions under North Carolina law controlled and could not be modified by the North Carolina Post-Release Supervision and Parole Commission. See United States v. Scott, 941 F.3d 677, 683–84 (4th Cir. 2019). And the officers were bound by Supreme Court precedent establishing that officers cannot gain voluntary consent by claiming authority to enter a residence where they had no such authority. Bumper, 391 U.S. at 548–49.

Concededly, the officers apparently relied on the North Carolina Parole Commission's policy statement issued on April 1, 2019, which provided that post-release supervisees are subject to warrantless searches of their "persons, vehicles, and/or premises." (See id. at 10-11). The officers were no doubt acting with good intentions and in accordance with this policy statement. However, the good intentions of the officers in their actions of taking Defendant into Bandon Watkins' apartment to test his equipment is irrelevant in this case. This is because the warrant for Defendant clearly stated his probation was revoked and he was subject to be immediately arrested. There was no need to go into the apartment.

Although the subsequent search revealed that Defendant illegally was in possession of firearms, the discovery was a result of an improper search. Therefore, the evidence must be suppressed.

### IV. CONCLUSION

On Defendant's motion to suppress, this Court finds that the evidence discovered was the result of an illegal search. Therefore, the motion to suppress is granted.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Suppress, (Doc. No. 22), is **GRANTED**.

Signed: November 23, 2021

Max O. Cogburn Jr.
United States District Judge